**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ------------------------------------ | X | |
| GLOBAL ASSOCIATION OF RISK PROFESSIONALS, | ) | Civil Action No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES CARRÉ, III, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | X | |

## COMPLAINT

Plaintiff Global Association of Risk Professionals ("GARP" or the "Company"), by and through its undersigned attorneys, Seyfarth Shaw LLP, as and for its Complaint against Defendant Charles Carré, III alleges as follows:

## NATURE OF THE ACTION

1.     GARP, a leading professional association for risk managers, brings this action for injunctive relief and damages arising from its employee Carré's blatant theft of thousands of files, much of which is comprised of confidential and trade-secret information relating to GARP's core business.  By this action, GARP seeks, among other things, a return of all of GARP's confidential information and trade secrets ("GARP Confidential Information") in his possession and control, an injunction prohibiting him from using or disclosing any GARP Confidential Information, and damages resulting from his willful misconduct.

2.     Specifically, a review of GARP's technology network revealed that while on an extended leave of absence, on January 24 through January 31, 2023, Carré surreptitiously

accessed and mass downloaded 2,577 of GARP's files to his laptop computer without any business reason to do so.

3.      Around the same time, Carré also forwarded a number of GARP emails that contain attachments totaling nearly 1,000 confidential and proprietary files to his personal email account.

4.      Given that he had been on leave of absence for over six months since June 22, 2022, Carré had no business justification to access, download, or forward any of the files.  Nor did anyone within the Company authorize him to do so.

5.      Immediately upon learning of Carré's improper conduct, on February 3, 2023, GARP confronted Carré and demanded that he delete all files, and certify as to the destruction of same.

6.      Carré ignored GARP's demand, prompting GARP to send another follow-up demand on February 17, 2023.

7.      Carré again failed to comply with GARP's demand.  On March 3, 2023, GARP terminated Carré's employment effective immediately, as a result of the foregoing misconduct and his refusal to comply with GARP's directive to delete the files, all of which violated the Company's confidentiality policies as set forth in his written agreement with GARP and the Company's Employee Handbook (the "Handbook").

8.      Carré's actions as described herein are in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, his employment agreement that he signed on February 19, 2017 (the "Employment Agreement"), the company's policies as reflected in the Handbook, and his fiduciary duties to GARP, among other common law obligations.

9.      With this action, GARP seeks injunctive relief, compensatory and punitive damages against Carré arising from his misconduct, and specific performance that Carré be ordered to return the stolen files to GARP.

10.     Absent injunctive relief, GARP faces irreparable injury, including the loss of proprietary information relating to its core business as contained and reflected in the thousands of files purloined by Carré that GARP spent developing over the course of many years, in amounts which may be impossible to determine unless Carré is enjoined and restrained by order of this Court.

## THE PARTIES

11.     GARP is a not-for-profit membership association under Section 501(c)(6) of the United States Internal Revenue Code of 1986, as amended and is incorporated under the laws of the state of New Jersey with its principal place of business located in Jersey City, New Jersey.

12.     Upon information and belief, Carré is a citizen of the State of New York.

## JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00 excluding interest and costs.

14.     This Court also has original subject matter jurisdiction under 28 U.S.C. § 1331, because this action involves a claim arising under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832, et seq., and supplemental jurisdiction under 28 U.S.C. § 1367 because all other claims are so related that they form part of the same case or controversy.

15.     This Court has personal jurisdiction over Carré, and venue is proper in this District, based upon Carré's contacts with this jurisdiction, the fact that he worked out of

GARP's office in New Jersey, conducts business in New Jersey, committed tortious acts against GARP in New Jersey, and/or caused harm to GARP in New Jersey.

**ALLEGATIONS COMMON TO ALL COUNTS**

**GARP's Business**

16.    GARP is a New Jersey nonprofit corporation. It is the leading professional association for risk managers and risk management professionals.[1]

17.    GARP is dedicated to the advancement of the risk management profession through education, research, and the promotion of best practices. GARP membership empowers a risk management community of 260,000 participants in 195 countries and territories through networking, engagement opportunities, and access to useful industry insights.

18.    Local GARP chapters host region-specific events, where risk professionals can learn from executive practitioners and make valuable connections.

19.    GARP's key competitors include the CFA Institute, the Chartered Alternative Investment Analyst Association, and Professional Risk Managers' International Association.

**GARP's Certifications and Examinations**

20.    GARP's main source of revenue comes from its certification and certificate programs.

21.    GARP's Financial Risk Manager (FRM®) Certification is the leading global designation for risk managers in the financial industry.  This designation can only be obtained by

---

[1] Financial risk management is the process of evaluating and managing current and possible financial risk to decrease an organization's exposure to risk. Financial risk management involves identifying the risk, measuring it, evaluating all possible remedies, developing a strategy and then implementing the steps and financial instruments necessary to minimize potential ramifications.
https://www.gartner.com/en/finance/glossary/financial-risk-management#:~:text=Financial%20risk%20management%20is%20the,an%20organization's%20exposure%20to%20risk

passing GARP's rigorous two-part examination and meeting defined experience requirements. FRM Certification has been recognized as being equivalent to a master's degree in financial risk management.

22.     GARP's Sustainability and Climate Risk (SCR®) Certificate, which was rolled out in 2020, prepares candidates for sustainability and climate risk challenges.  As with FRM, the SCR certificate can only be obtained by passing a rigorous examination.

23.     At GARP, the Content Information and Continuing Education ("CICE") team engages with and supports the process for the development of the FRM and SCR study materials and examinations.

24.     Among other things, the CICE team coordinates the development or updating of the certification curriculum, identifies appropriate literature in support of that curriculum, and works with external subject matter experts ("SMEs") to draft questions for GARP examinations pursuant to GARP's proprietary stylistic and substantive guidelines, all of which constitute GARP Confidential Information.

25.     CICE members also participate in regular team meetings concerning business processes, goals, initiatives, and objectives, all of which also constitutes GARP Confidential Information.

26.     GARP's development of its exams is part of an ongoing, iterative process by which the curriculum and examinations have evolved over the past 25 years.

**GARP's Measures to Protect GARP Confidential Information**

27.     Given the paramount importance of GARP Confidential Information to GARP and its business, GARP takes a number of steps to maintain the confidentiality of GARP Confidential Information.  These measures include: (i) making all employees subject to the

confidentiality provisions of GARP's Employee Handbook (the "Handbook"); (ii) making all employees subject to express "Confidential Information" provisions in their offer letters; (iii) limiting access to GARP Confidential Information through multi-factor authentication prior to being able to access GARP computer systems; and (iv) monitoring employee access and activity to detect questionable activities including the download of files from the corporate network.

28.    With respect to GARP Confidential Information, the Handbook expressly states as follows:

> The Company's confidential and proprietary information is vital to the current operations and future success of the Company, as well as confidential or proprietary information that it receives from others through third-party contracts and agreements such as the use of certain trademarks and patents.  Each employee shall use all reasonable care to protect or otherwise prevent the unauthorized disclosure of such information.   In no event shall confidential information be disclosed or revealed within or outside the Company without proper authorization or purpose.  If an employee is uncertain whether certain information should be treated as confidential, the employee should presume that such information is confidential and shall not disclose it without proper authorization.
>
> "Confidential Information" refers to a piece of information, or a compilation of information, in any form (on paper, in an electronic file, or otherwise), related to the Company's business that the Company has not made public or authorized to be made public, and that it is not generally known to the public through proper means, including this Handbook.  It also refers to the same information provided to the Company by a third-party (such as a licensing arrangement).
>
> By way of example, confidential or proprietary information will include information regarding the Company's business methods, business plans, business contracts, databases, systems, technology, intellectual property, know-how, marketing plans, business development, operations, products, services, research, development, inventions, financial statements, financial projections, financing methods, pricing strategies, customer sources, employee health/medical records, system designs, customer lists, and methods of competing. . . .

*See* Handbook § 5-12, at 52-53.

29.    The Handbook further requires employees who leave the Company to "return to the Company all of their Confidential Information in the employee's possession or control,

including but not limited to, documents, files, records, manuals, information stored on a computer or on a computer disc, thumb drive, or other peripheral device. *Id.*

30.     In addition, Section 5-4 of the Handbook contains a policy governing employee use of the Company's computer systems, and provides the Company with the right to inspect and monitor its employees' email communications and other digital activities.   Specifically, the Handbook states:

> The Company's communication and computer systems are intended primarily for business purposes; however limited personal usage is permitted if it does not hinder performance of job duties or violate any other Company policy.   This includes the voice mail, e-mail, and Internet systems.   Users have no expectation of privacy in regard to their use of the Company systems.

> The Company may access the voice mail and e-amil systems and obtain the communications within the systems, including past voice mail and e-mail messages, without notice to users of the system, in the ordinary course of business, when the Company deems it appropriate to do so.

> Further, the Company may review employees' messages and/or use of Company systems, at any time, without notice to the employee.   The Company employs monitoring software for many reasons, one of which is to enforce our IT policies. The Company may monitor network and computer usage by installing software on individual computers and/or at the network perimeter.

31.     The Handbook also contains a policy governing employee use of portable communication devices, which are also subject to monitoring, whether Company-provided or personal.   Specifically, Section 5-7 of the Handbook provides:

> Company-provided portable communication devices (PCDs), including cell phones and tablets, should be used primarily for business purposes.   Employees have no reasonable expectation of privacy in regard to the use of such devices, and all use is subject to monitoring, to the maximum extent provided by applicable law.    This includes as permitted the right to monitor personal communications as necessary.

> Some employees may be authorized to use their own PCD for business purposes. These employees should work with the IT department to configure their PCD for business use.   Communications sent via a personal PCD also may be subject to monitoring if sent through the Company's networks and the PCD must be provided for inspection and review upon request.

….

If an employee who uses a personal PCD for business resigns or is terminated, the employee will be required to submit the device to the IT department for resetting on or before their last day of work.  At that time, the IT department will reset and remove all information from the device, including but not limited to, Company information and personal data (such as contacts, e-mails and photographs). . . .

Employees may not use their personal PCD for business unless they agree to submit the device to the IT department on or before their last day of work for resetting and removal of Company information.  This is the only possible way to ensure that all Company information is removed from the device at the time of termination.   The removal of Company information is crucial to ensure compliance with the Company's confidentiality and proprietary information policies and objectives.

Please note that whether employees use their personal PCD or a Company-issued device, the Company's electronic communications policies, including but not limited to, proper use of communications and computer systems, remain in effect.

### Carré's Employment with GARP

32.     Carré began his employment with GARP as Assistant Vice President in GARP's Energy Risk Professionals ("ERP") program, effective February 28, 2017.  Carré accepted GARP's letter offer of employment when he countersigned the offer letter on February 19, 2017 (the "Employment Agreement").

33.     The Employment Agreement contains express provisions governing the use and non-disclosure of GARP Confidential Information, to which he would have access during the course of his employment with GARP.   Specifically, Carré agreed when he signed the Employment Agreement:

You acknowledge that your services to the Association will bring you into contact with sensitive or secret information relating to (a) the Association, its successors, subsidiaries, assigns, officers, employees, associated entities and/or agents, (b) clients and/or members and/or prospective clients and/or members of the Association and/or of the Association's predecessors, successors, subsidiaries and/or associated entities, (c) vendors and/or prospective vendors of goods or services to the Association and/or to the Association's predecessors, successors, subsidiaries and/or associated entities, (d) executives and/or prospective executives of the Association's predecessors, successors, subsidiaries and/or

associated entities (any and/or all of the above-described, collectively "Confidential Information")

34.     Carré further agreed in the Employment Agreement:

You further understand and acknowledge that Confidential Information includes, among other things, (a) any and all information, trade secrets, inventions or ideas that give the Association or its predecessors, successors, subsidiaries or associated entities the opportunity to obtain an advantage over such competitors of the Association, (b) information concerning the objectives, plans, commitments, contracts, leases, operations, employees methods, marketing investigations, surveys, research, records, and costs and prices of the Association, (c) information concerning the identities, objectives, plans preferences, needs, requests, specifications, commitments, contracts, operations, methods and records of the Association, subsidiaries', associated entities' or assigns' competitors, clients[,] prospective clients, vendors, prospective vendors, lenders, prospective vendors.

35.     With respect to the non-disclosure of GARP's Confidential Information, Carré expressly agreed:

You agree that such Confidential Information shall not be disclosed either directly or indirectly to any entity or person outside of the Association's employ during the term of your employment and for a period of one (1) year after any termination, resignation or expiration of such employment, however caused.

36.     As an employee of GARP, Carré was also subject to the Handbook and its express policies regarding the use of GARP's computer systems, and the protection and non-disclosure of GARP's confidential information.

37.     In 2021, Carré began working in GARP's CICE group.

38.     One of CICE's functions is to support of the development of GARP's certification examinations and related program materials that are at the core of GARP's business.

39.     As a member of this group, Carré's responsibilities included, among other things, supporting the update and development of curriculum, coordinating the exam question solicitation and review processes for GARP's FRM certification and SCR certificate programs, and providing guidance and recommendations to internal and external stakeholders involved in

the development of GARP's examinations and related program materials, working with SMEs to draft and evaluate test questions, and supporting initiatives relating to continuing professional development of credential holders.

**Carré's Extended Leave of Absence**

40.     In June 2022, Carré took a leave of absence from his employment with GARP pursuant to the Family and Medical Leave Act.

41.     At Carré's request, his leave of absence was extended several times through December 15, 2022.  However, Carré failed to return to work on that date or provide any updated medical paperwork as requested.

42.      Carré's continued leave of absence after December 15, 2022 was not authorized by the Company.

**Carré's Unauthorized Access and Download of GARP's Files**

43.     As part of a practice to review the digital activities of GARP's employees who are out on extended leave, on February 2, 2022, GARP reviewed the Company's servers to see if Carré was engaging in any activity on GARP's computer network, including GARP's private, secured corporate Dropbox account where much of GARP's work product for ongoing projects is stored, and is made accessible to only certain employees on a need-to-know basis.

44.     A review of the corporate Dropbox account logs revealed that, despite having been on leave of absence since June 2022, Carré accessed GARP's corporate Dropbox account on multiple occasions in January 2023, including on January 4, January 24, 25, 26, 27, 28, and 31.  Prior to January, the last time he accessed the Dropbox account was in June 2022.

45.     The logs further revealed that on January 24 - 31, 2023, Carré downloaded 2,577 files from the corporate Dropbox account to his laptop computer.

46.     GARP's investigation also revealed that on January 4, 2023, Carré forwarded at least ten emails from his GARP corporate email account to the email addresses scc4319@gmail.com and scc4319@hotmail.com.  These emails attached within them additional emails, which themselves contained attachments of GARP's files, some of which include highly confidential information relating to GARP's business.  There were almost 1,000 attachments to these emails.  On information and belief the recipients of these emails and attachments are Carré's personal email accounts.

47.     Many of these files downloaded by Carré to his personal computer contain highly proprietary GARP Confidential Information, including work product relating to GARP's processes for developing programs and curriculums, draft examination questions and feedback from subject matter experts, and other intellectual property relating to the development and implementation of these programs.

48.     GARP's initial analysis revealed that among the documents and information unlawfully taken by Carré were the following:

- Item Writer Style and Template and Style Guidelines.  These documents provide guidance to SMEs that help write exam questions.  They contain proprietary information concerning development and processes for writing questions.

- Participant Agreements and Non-disclosure Agreements with professionals and SMEs.  They lay out, among other things, confidentiality obligations, the process professionals and SMEs are to follow, and information concerning their roles and responsibilities.

- Names, contact information, and certain personally identifiable of information of SMEs.

- Learning Objectives.  These documents indicate how different areas are divided among Item Writers and how readings are assigned upon which exam questions are drafted.

- Draft test questions.  These are early-stage exam questions prepared by SMEs and Item Writers.  The questions are refined internally but would be useful to a competitor both for process and content development.

- Weekly meeting notes.  These notes relate to weekly meetings with Carre's manager, which contain process information relating to how Item Writer Drives are conducted.

- CICE Weekly Meetings.  Notes on these meetings contain confidential information regarding business processes, initiatives, goals, and objectives.

- Outline of Scope of 2022 FRM Item Writer Drive 2/22 meeting. This document contains information relating to goals and activities that go into GARP's initial test question development.

- 2019 Exam Review.  This document contains early stage ERP exam content, which reflects GARP's processes.

- SCR IW Spring 2022 – SCR item writer.  This document provides guidelines for GARP examination test question development.

- ERP Readings, Learning Objectives, Study Guides, Practice Exams, Part I and Part II Exam Books, and two distinct exams.

- SCR Book and Learning Objectives.  This contains confidential and proprietary information about GARP's SCR certificate program.

49.     These are just some of the examples of the confidential and proprietary information downloaded by Carré, all of which constitutes GARP Confidential Information.

50.     Carré also forwarded a number of emails from his corporate email account to what are believed to be his personal email accounts on Gmail and Hotmail.  The emails contain nearly 1,000 attachments, some of which include highly confidential information relating to GARP's business.

51.     Carré did not have authority to access, download, or forward to himself any of the Company's files while on leave.  Indeed, there is no reason for Carré to have been accessing GARP's servers or any of the files therein, or to be mass downloading GARP's business files given that he was on extended leave of absence.

**Carré's Refusal to Comply with GARP's Demand for the Return of the Files that Carré Mass Downloaded Without Authorization**

52.     By email dated February 3, 2023, GARP sent an email to Carré about his unauthorized download of GARP's files.  Carré was given until February 6, 2023 to delete all the downloaded documents and respond to the email with a certification that all files and emails were deleted.

53.     Having received no response to the February 3 email, on February 17, 2023, GARP sent a follow-up email demanding again that Carré respond to GARP's demands regarding his unauthorized download of GARP's files by February 21, 2023.

54.     Rather than comply to GARP's demands, Carré replied that same day, "I am planning to return to work shortly from my protected medical leave and will be requesting a reasonable accommodation for my disabilities.  I will provide appropriate documentation.  I suggest we discuss your February 3, 2023 e-mail upon my return to the office."

55.     GARP responded to the email on February 21, 2023 by reminding Carré that he was on an unapproved leave of absence, that he failed to submit his medical paperwork by the December 15, 2022 deadline, and that his failure to respond to the evidence of Carré's unauthorized download was of alarming concern to the company.

56.     During this time, Carré's lawyer contacted the Company and scheduled a phone call with the Company's counsel.  However, Carré's lawyer canceled the scheduled call and never rescheduled.

57.     Having not responded further to GARP's demands regarding the unauthorized download, on March 3, 2023, Carré was notified of his termination of employment, effective immediately, due to his improperly accessing and downloading GARP's highly confidential files and forwarding other files to his personal email account with no business purpose and in

violation of Company policy, and his failure to provide GARP with any information regarding his disclosure, destruction or storage of GARP's files.

58.     The notice of termination further demanded that all GARP property in his possession be returned immediately, including his laptop, keyboards, cameras, ID Badge, and any confidential information in his possession.

59.     To date, Carré has not responded to nor complied with GARP's demand regarding GARP Confidential Information or the return of GARP property.

**Irreparable Harm to GARP Without Injunctive Relief**

60.     GARP Confidential Information is the lifeblood of its business.

61.     Anyone with access to GARP Confidential Information can replicate GARP's processes for developing its curriculum and examinations, as well as the examinations themselves, and can take advantage of the time and money GARP has invested to develop its curriculum and examinations to unfairly capitalize on GARP's work to compete against GARP.

62.     Anyone with access to GARP Confidential Information also could interfere with GARP's relationships with its SMEs and its program participants.

63.     In addition, if GARP's examination questions or draft questions were made public, the examinations would be compromised and the integrity of GARP's certifications would be jeopardized.

64.     GARP will be irreparably harmed by the disclosure or publication of GARP Confidential Information by Carré.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Actual and/or Threatened Misappropriation of Trade Secrets, 18 U.S.C. § 1832)**

65.     GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

66.     By virtue of his employment at GARP and performance of responsibilities for GARP, Carré was given access to and possessed trade secrets and confidential and proprietary information of GARP, to wit, the GARP Confidential Information.

67.     The GARP Confidential Information was developed by GARP at great time, cost, and expense to GARP, and is maintained on password protected computer networks accessible only by GARP employees with need to use information on GARP's behalf.

68.     GARP derives independent economic value from the GARP Confidential Information entrusted to Carré by GARP; such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

69.     Such information is considered a trade secret under the Federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq.*, because GARP derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839.

70.     Carré acquired GARP's trade secrets, including the GARP Confidential Information, by improper means and without authorization, including by surreptitiously downloading 2,577 files to his laptop computer, and forwarding nearly 1,000 additional files to his personal email accounts, away from GARP's network and outside of GARP's control.

71.     By his actions, Carré has used and disclosed, intends to use and disclose and/or threatens to use or disclose GARP's trade secrets without express or implied consent.

72.     Carré knew or should have known that such information, including the GARP Confidential Information: (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by GARP at great expense and effort; (4) was maintained as confidential and is not generally available to the public and GARP's competitors; (5) would provide significant benefit to a competitor competing or seeking to compete with GARP; and (6) is critical to GARP's ability to conduct its business successfully.

73.     Carré has misappropriated, exploited, misused, and/or disclosed or threatened to disclose GARP's trade secrets for his own self-interest and benefit, and without GARP's express or implied consent.

74.     Carré will be or is being unjustly enriched by the misappropriation of GARP Confidential Information and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate GARP Confidential Information.

75.     As a result of Carré's wrongdoing, GARP has suffered and continues to suffer the substantial and irreparable loss of its trade secrets, goodwill, and business expectancies in amounts which may be impossible to determine unless Carré is enjoined and restrained by order of the Court.

76.     In addition, GARP seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Actual and/or Threatened Misappropriation of Trade Secrets in Violation of the New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq.*)**

77.     GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

78.     By virtue of his employment at GARP and performance of responsibilities for GARP, Carré was given access to and possessed trade secrets and confidential and proprietary information of GARP, to wit, the GARP Confidential Information.

79.     The GARP Confidential Information was developed by GARP at great time, cost, and expense to GARP, and is maintained on password protected computer networks accessible only by GARP employees with need to use information on GARP's behalf.

80.     GARP derives independent economic value from the GARP Confidential Information entrusted to Carré by GARP; such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

81.     Such information is considered a trade secret under the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. 15-1, *et seq.*, because GARP derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.  18 U.S.C. § 1839.

82.     Carré acquired GARP's trade secrets, including the GARP Confidential Information, by improper means and without authorization, including by surreptitiously

downloading 2,577 files to his laptop computer, and forwarding nearly 1,000 additional files to his personal email accounts, away from GARP's network and outside of GARP's control.

83.     By his actions, Carré has used and disclosed, intends to use and disclose GARP's, and/or threatens to use or disclose trade secrets without express or implied consent.

84.     Carré knew or should have known that such information, including the GARP Confidential Information: (1) is confidential; (2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; (3) was developed or acquired by GARP at great expense and effort; (4) was maintained as confidential and is not generally available to the public and GARP's competitors; (5) would provide significant benefit to a competitor competing or seeking to compete with GARP; and (6) is critical to GARP's ability to conduct its business successfully.

85.     Carré has misappropriated, exploited, misused, and/or disclosed or threatened to disclose GARP's trade secrets for his own self-interest and benefit, and without GARP's express or implied consent.

86.     Carré will be or is being unjustly enriched by the misappropriation of GARP Confidential Information and, unless restrained, will continue to threaten to use, actually use, divulge, inevitably disclose, acquire and/or otherwise misappropriate GARP Confidential Information.

87.     As a result of Carré's wrongdoing, GARP has suffered and continues to suffer the substantial and irreparable loss of its trade secrets, goodwill, and business expectancies in amounts which may be impossible to determine unless Carré is enjoined and restrained by order of the Court.

88.     In addition, GARP seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
**(Breach of Contract: Non-Disclosure of Confidential Information)**

89.     GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

90.     On or about February 19, 2017, Carré entered into the Employment Agreement which explicitly prohibited him from, *inter alia*, using or disclosing any of GARP's confidential information other than in the performance of duties for and authorized by GARP.

91.     The confidential obligations contained in the Employment Agreement remain in full force and effect, and Carré, for good consideration, remains obligated to comply with those obligations.

92.     Carré breached the Employment Agreement by, downloading 2,577 files containing GARP Confidential Information, forwarding to his personal email account an additional nearly 1,000 files containing GARP Confidential Information, refusing to explain his actions to GARP, and refusing to comply with GARP's demand that he delete the purloined files, all for his own benefit and for an unauthorized purpose.

93.     Carré's actions have damaged GARP's legitimate business interests, and have denied GARP the benefit of its bargain in respect to the Employment Agreement.

94.     As a result of Carré's breach, GARP has suffered and continues to suffer irreparable injury, including loss of its confidential information, business expectancies, and damage to goodwill, for which a remedy at law is inadequate.  Accordingly, GARP is entitled to injunctive and equitable relief.

95.     In addition, GARP seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Replevin)

96.     GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

97.     As explicitly stated in the Handbook, GARP is entitled to possession of all of GARP's property that was provided to Carré while he was employed by GARP.

98.     Carré is currently in possession of GARP's property, including GARP Confidential Information.  Despite his duties and obligations under the Employment Agreement and the Handbook, Carré has not returned GARP's property, including GARP Confidential Information to GARP.

99.     GARP has demanded that Carré immediately return all of GARP's property, including any confidential information, in his possession and to provide proof that all such information has been removed from his computers and has not been disseminated to any third parties.

100.    Carré has no right to possession of the GARP Confidential Information.

101.    The GARP Confidential Information in Carré's possession has not been taken for any tax, assessment or fine.  Nor has the GARP Confidential Information been seized under any execution or attachment against property.  The GARP Confidential Information is not exempt from seizure.

20

102.    GARP needs the GARP Confidential Information and protect it from disclosure and misuse in order to maintain its competitive advantage it has developed at great time and substantial expense by GARP.

103.    Based upon information and belief, the GARP Confidential Information in Carré's possession, including the 2,577 files that he downloaded to his computer without authorization, and the additional files that he forwarded to his personal email accounts, is located at Carré's home in Sagaponack, New York.

104.    GARP is lawfully entitled to repossess the GARP Confidential Information being wrongfully detained by Carré.  GARP has a superior right to the GARP Confidential Information and Carré does not.

105.    In addition, GARP is entitled to recover its attorneys' fees and expenses it incurs as a result of Carré's theft of and refusal to return the GARP Confidential Information.

## AS AND FOR A FIFTH CAUSE OF ACTION
**(Conversion)**

106.    GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

107.    Carré has intentionally and wrongfully misappropriated GARP's property, including, among other things, GARP Confidential Information.

108.    Carré has failed and/or refused to return this property to GARP despite GARP's demand and the obligations imposed by the Company's written policies.

109.    Carré's actions and wrongful detention of GARP Confidential Information has interfered with GARP's dominion and control over its property, that will result in the dilution of its value.

110.    As a result of Carré's intentional and wrongful conduct, GARP has been and will continue to be injured, for which it is entitled to recover actual, incidental, compensatory, punitive and consequential damages in an amount to be determined at trial.

111.    GARP is further entitled to recover all monies expended to recover converted property as special damages, including attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

112.    GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein..

113.    Carré obtained the GARP Confidential Information that in equity and good conscience he should not have obtained.

114.    Carré's theft of GARP Confidential Information has unjustly enriched Carré at GARP's expense.

115.    As a consequence of Carré's unjust enrichment, GARP has been and will continue to be injured, for which it is entitled to recover actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

116.    GARP repeats and re-alleges each and every allegation contained in the preceding paragraphs of the Complaint as if fully set forth herein.

117.    In his capacity as Assistant Vice President, Carré was placed in a position of trust and confidence, and was expected to devote his full time to the management and promotion of the company's business interests.

22

118.    As a result of this special relationship, Carré owed certain fiduciary duties to GARP, including a duty of loyalty and honesty, and a duty not to act in any way contrary to the interests of GARP, including, but not limited to, a duty, while still employed with GARP and being compensated by the Company: (a) not to misuse or misappropriate the Company's confidential or trade secret information, (b) failing to return company property; and (c) not to be deceitful to the Company.

119.    Notwithstanding these obligations and duties, and in violation thereof, Carré breached his fiduciary duty of loyalty and honesty to GARP by, among other willful acts of misconduct, (a) stealing data belonging to GARP out of GARP's control and into his own possession for his own personal benefit; (b) failing to return company property; and/or (c) ignoring GARP's demands to remove the GARP Confidential Information from his possession.

120.    As a consequence of Carré's breach of his fiduciary duty of loyalty to GARP, GARP has been injured and face irreparable injury.  GARP is threatened with loss and misuse of its confidential and trade secret information, including the GARP Confidential Information in amounts which may be impossible to determine, unless Carré is enjoined and restrained by order of this court.

121.    In addition, as a consequence of Carré's breach of his fiduciary duty, GARP seeks actual, incidental, compensatory, punitive and consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

**WHEREFORE**, GARP seeks judgment in its favor and an Order against Carré that grants the following relief:

1.    A preliminary injunction and after trial, a permanent injunction that:

(a).    Preliminarily and permanently enjoins Carré from breaching his confidential obligations to GARP;

    (b)        Preliminarily and permanently enjoins Carré, and all persons and/or entities acting on his behalf, for his benefit, or in active concert or participation with him, from directly or indirectly accessing, disclosing, reproducing, or using any confidential, proprietary and/or trade secret information of any kind, nature or description belonging to GARP;

    (c)        Preliminarily and permanently enjoins Carré from obtaining employment with, providing services to, or otherwise entering into a relationship with any person or entity that competes with GARP;

2.        Orders that Carré and all parties in active concert or participation with him to return to GARP all originals and copies of all files, devices and/or documents that contain or relate to GARP's confidential, proprietary and trade secret information;

3.        Orders that Carré produce for inspection and imaging all computers and other electronic storage devices and email accounts belonging to, under the control of, accessible to, or operated by Carré;

4.        Actual, incidental, compensatory, and consequential damages in excess of $75,000;

5.        Punitive damages in an amount to be proven at trial due to Carré's willful and malicious conduct;

6.        Costs and expenses incurred herein, including reasonable attorneys' fees and interest, including pursuant to 17 U.S.C. § 512(f)(2);

7.        All other relief as the Court may deem just, equitable and proper.

Dated:  New York, New York
        March 7, 2023

        Respectfully submitted,

        SEYFARTH SHAW LLP

        By:    s/ *Jeremy A. Cohen*
           Jeremy A. Cohen
           James S. Yu
        620 Eighth Avenue
        New York, New York 10018
        Tel.: (212) 218-5500
        Fax: (212) 218-5526